## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GREGORY B. MYERS | ) | Case No:    15-26033 |
| | ) | (Chapter 7) |
| DEBTOR. | ) | |
| | ) | |
| ************************************** | )****************************** | |
| 6789 GOLDSBORO LLC, | ) | |
| | ) | |
| PLAINTIFF, | ) | Adv. No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY B. MYERS | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SERV TRUST | ) | |
| | ) | |
| And | ) | |
| | ) | |
| ROGER SCHLOSSBERG, | ) | |
| *Chapter 7 Trustee* | ) | |
| | ) | |
| DEFENDANTS | ) | |

### COMPLAINT FOR DECLARATORY JUDGMENT

Comes now 6789 Goldsboro LLC ("Goldsboro" or the "Plaintiff"), through its undersigned counsel of record, and as and for its Complaint for Declaratory Judgment (this "Complaint") against Gregory B. Myers (the "Debtor" or "Mr. Myers") and Serv Trust ("Serv Trust") (the Debtor and Serve Trust being collectively known as the "Defendants" and each being individually known as a "Defendant") states as follows:

### PARTIES

1.  Goldsboro is an LLC formed and existing pursuant to the laws of the State of Maryland, with its primary place of business being within the State of Maryland.

2. The Debtor is a natural person who, upon information and belief, is a citizen of either the State of Florida or the State of Maryland.

3. Serv Trust holds itself out as a Maryland statutory trust, with its two claimed trustees being the Debtor and Daniel Ring ("Mr. Ring"), and with Mr. Ring, upon information and belief, being a citizen of the State of Maryland.

4. Roger Schlossberg is the Chapter 7 Trustee, in the Debtor's case.

## JURISDICTION & VENUE

5. This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001(2) and 7001(10).

6. The Court has jurisdiction over this case pursuant to Section 1334 of Title 28 of the United States Code, this being a matter arising under Title 11 of the United States Code.

7. The Court also has jurisdiction over this case pursuant to the allowances of Section 157(b)(2) of Title 28 of the United States Code, this being a core proceeding.

8. Venue is proper in this Court pursuant to Section 1409 of Title 28 of the United States Code.

## GENERAL FACTS: SERV TRUST AND GOLDSBORO FORMED

9. Serv Trust was originally created by the Debtor's mother, for the supposed benefit of the Debtor's children.

10. The Debtor has been a trustee of Serv Trust at all times relevant to this action, and upon information and belief, has exercised all decision-making authority for Serv Trust – notwithstanding the nominal presence of a co-trustee.

11. In or before 2009, the Debtor experienced financial difficulties and stopped paying the mortgage on numerous pieces of real property owned by himself, his wife, and/or him and his wife jointly.

12. Following the Debtor's financial difficulties, he came to defend multiple foreclosure suits and other legal proceedings, coming to understand that his remaining assets, however great or meager, would eventually be subject to the attack and/or attachment of his creditors.

13. During or before 2011 the Debtor personally discovered a piece of property located at 6789 Goldsboro Road, in Bethesda, Maryland (the "Property") which was listed as being for sale, and which was being marketed as a single family home.

14. The Debtor, having a background in the real estate industry, recognized the Property to be on a parcel of land that could support additional dwelling units, and believed that parcel of land to be in a desirable location.

15. The Debtor, owing millions of dollars to his creditors, facing the likely prospect of declaring bankruptcy in the coming years, and not having access to the funds requisite to acquire the Property, sought out an investment partner and was introduced to Brian King ("Mr. King").

16. Mr. King offered to put up the money needed to acquire the Property, alongside his wife and a trust for the benefit of his children (collectively, the "King Family"), if an investment entity was created where the King Family would have a senior interest in the Property.

17. In turn, it was agreed the Debtor would be the manager of the entity created to acquire the Property, and could have a one half (1/2) subordinate interest in the entity which could be redeemed by the King Family, or no consideration, if the Property was not worth more than the King Family's gross investment after three (3) years.

18. This agreement was memorialized in the operating agreement of Goldsboro.

19. The Debtor, however, did not want to take a subordinate interest in Goldsboro in his own name, knowing that his creditors might be able to attach that interest, obtain a charging order against that interest, or otherwise take it from him.

20. So instead of personally taking the interest in Goldsboro – an interest obtained by the goodwill of the Debtor in finding the Property, and by efforts that the Debtor would expend managing Goldsboro – the Debtor indicated the interest would be held by Serv Trust.

21. In accord with this arrangement, Serv Trust became the junior member of Goldsboro.

22. Even though the Debtor was supposedly involved with Goldsboro in his role as a trustee of Serv Trust, he personally became the manager of Goldsboro and oversaw efforts to assess development opportunities for the Property, putting his own "sweat equity" into the project.

**GENERAL FACTS: SERVE TRUST'S
CONTINUED USED AS ALTER EGO OF DEBTOR**

23. Early in the existence of Goldsboro, the Debtor approached Mr. King, indicated the Debtor needed money, and asked for a loan.

24. Mr. King agreed to capitalize Goldsboro with monies to be loaned to the Debtor.

25. The Debtor asked that the loan be made to Serv Trust, instead of to him personally, but that the loan be given to him personally.

26. From 2014 through 2016, the Debtor asked Mr. King to capitalize Goldsboro with money for loans to be made on a least twenty-eight (28) separate occasions, with the total of such loans equaling Six Hundred Thirty Thousand Dollars ($630,000.00) (the "Loans") and interest accruing on such loans.

27. All of the Loans were paid directly to either the Debtor or his wife; none were ever wired into a bank account of Serv Trust, depositing into a checking account of Serv Trust, or otherwise made in a fashion that suggested Serv Trust to have any possession of the funds.

28. In asking for the Loans, the Debtor would often indicate the need in a personal regard – not in one aimed at any fiduciary obligation.

29. By way of example, on April 22, 2016, the Debtor wrote to Mr. King, "Hey Brian – following up on our conversation the other day – I greatly appreciate you advancing June and July now ($30K) as the insurance company totally f'd me, and I'm on fumes here."

30. The Debtor followed up on April 25, 2016, "Brian – I'm dead in the water without the wire on/before May 2. Please reconsider and advance $15k on Money May 2 (June advance), with the other $15k on May 8 (July advance). I wouldn't ask you to do this unless it was an emergency."

31. On June 9, 2016, the Debtor send Mr. King another request for money, indicating that some of the money was needed for one of his children but that most of it was for other, completely unrelated things: "I only want to ask you for what I need to survive right now, which is $40k (which includes $15k to pay past tuition for Teddy so he can get his official transcript from Furman to transfer to Trinity; $5k to keep my Chapter 11 alive, $2,270 for monthly health insurance premiums; $3,500 in past due utilities; $10k in legal fees for appeals; food, gas, etc.)." (Emphasis added)

32. On July 14, 2016, the Debtor wrote to Mr. King, "I am sitting here bleeding waiting for Danielle – I have two checks that will be presented today totaling just under $7k to an attorney – who, if my checks bounce, with withdraw from my appeal- as well as my family's health insurance expired on July 1 and I am now past the grace period…I am respectfully requesting that you have Chris wire $10k this morning so I can cover these extremely critical

5

payments while Danielle finishes her edits and we can get papers circulated. Holding up a $10k given where we are only hurts me." (emphasis added)

33. On May 16, 2016, the Debtor wrote Mr. King, "Brian – I appreciate the June draw you sent on May 3, but I still need to get the $15k July draw early just to keep my head above water."

34. All of the foregoing e-mails were sent *after* the Debtor filed a voluntary Chapter 11 bankruptcy petition on November 18, 2015.

35. Even though the Debtor had personally guaranteed all of the Leans, he did not schedule Goldsboro as a creditor in his bankruptcy and never mentioned his guarantee in his schedules or any amendments thereto until such a time as Goldsboro entered an appearance in these bankruptcy proceedings.

36. Both prior to, and during, his bankruptcy, the Debtor has used Serv Trust as a tool to access money from Goldsboro without that money becoming part of his bankruptcy estate or being otherwise subject to the attack or collection of his creditors or those of his wife (who has twice been a debtor in bankruptcy in the past twelve months).

37. This behavior is consistent with the Debtor's original goal of having the subordinate interest in Goldsboro be acquired by Serv Trust, and not in his own name or that of his spouse, so it would not be attachable by his creditors.

38. This behavior is also consistent with the Debtor placing a large lien on one of his properties, in favor of Serv Trust (the "Lien"), with the goal of Serv Trust then being able to obtain funds from the sale of that property – for the personal use of the Debtor – before junior creditors of the Debtor could do so.

39. A review of the docket reveals the Lien became a source of early contention in this bankruptcy case, as the Debtor sold the subject property, disputed nearly every lien on the

6

property – except for Serv Trust's Lien – and made contradictory assertions about the size of the Lien, in an effort to deprive his creditors of money.

40. On February 15, 2017, following the filing of a motion to convert this case from Chapter 11 to Chapter 7 (the "Motion to Convert"), filed by the United States Trustee, the Court conducted a full evidentiary hearing on the Motion to Convert, at the conclusion of which the Court rendered an oral ruling converting the Debtor's case to Chapter 7.

41. This court subsequently noted that the Debtor's "failure to list Goldsboro in his initial schedules and his failure to disclose his personal guaranty of Goldsboro's advances to Serv Trust at the 341 Meeting was a significant factor in the Court's decision to convert Myer's case."

42. On May 18, 2017, United States Trustee brought an adversary proceeding to have the Debtor's discharge denied (the "Motion to Deny Discharge").

43. On September 28, 2018, this Court granted the Motion to Deny Discharge, issuing a lengthy written memorandum opinion (the "Denial Order").

44. In the Denial Order, this Court observed "The timing of the loans from Goldsboro and the execution of the Goldsboro Guaranty, combined with Myer's obfuscation on his liability to Goldsboro at the 341 Meeting, are sufficient to find the requisite fraudulent intent for purposes of §727(a)(4)… it is not believable that he simply forgot to include his largest unsecured creditor in the first several versions of his schedules when he had executed a personal guaranty in favor of that creditor six months prior to filing for bankruptcy and was requesting advances from the creditor u to and after filing his petition."

45. In the Denial Order, this Court also observed "Myers was adamant at trial that every payment that he and/or Kelly ever received from Serv Trust was for the benefit of the children."

46. Such testimony of the Debtor would have been untruthful in nature, as significant portions of such money were openly sought to pay the Debtor's legal fees in connection with various litigation matters (including this bankruptcy), as anecdotally established by the e-mails discussed above.

47. The Denial Order also observes, "the Court finds that the amount of Serv Trust's secured claim set forth on the Amended Schedule D was inflated and therefore, was a false claim and a false oath under §727(a)(4)," going on to note that the Debtor seemed inclined to use the Serv Trust Lien as a means of receiving money from the proceeds from a sale of property until such a time as Goldsboro – an unscheduled creditor – entered an appearance in this case and foreclosed that possibility.

48. The Denial Order also finds that the Debtor did not keep records of the money he received from Goldsboro (which was supposedly being loaned to Serv Trust) or of how that money was spent, even though he insisted (untruthfully) that it was spent on his children.

**GENERAL FACTS: LITIGATION**

49. In 2017, the King Family exercised their right to redeem Serv Trust's interest in Goldsboro, and then filed a declaratory judgment suit in Montgomery County, Maryland seeking a declaration of the same (the "State Court Declaratory Judgment Suit").

50. The Debtor initially tried to defend the State Court Declaratory Judgment Suit *pro se* before being directed by the clerk that Serv Trust would need counsel since it is a legal entity.

51. The Debtor then filed a suggestion of bankruptcy in the State Court Declaratory Judgment Suit, suggesting that his personal bankruptcy should stay the State Court Declaratory Judgment Suit.

52. While the King Family and Goldsboro would not realize it at the time, the Debtor was right – since Serv Trust is his alter ego, and an asset of his bankruptcy estate, the State Court

8

Declaratory Judgment Suit should have been stayed, and he should have amended his schedules to include the assets of Serv Trust (which he did not and has not).

53.     Goldsboro then filed suit against Serv Trust on the Loans, and that case was consolidated with the State Court Declaratory Judgment Suit.

54.     Serv Trust's counsel, in connection with the consolidated litigation cases, wrote to counsel for Goldsboro and the King Family, asking him to withdraw from such representation because he had previously represented the Debtor in various matters and "Given your representation of Mr. Myers in numerous matters relating to his personal and financial interests, including his interests in the entities and organizations he owns and/or controls, it is exceedingly difficult to imagine that you did not acquire knowledge and/or information regarding Mr. Myers and Serv Trust that already has (or at least almost certainly will be) used to the advantage of the King Parties and/or the LLC and to the detriment of Mr. Myers and Serv Trust in the actions at issue."

55.     Since, at the time, it was not fully realized that Mr. Myers was using Serv Trust as his alter ego, litigation counsel declined to withdraw, and no motion was ever filed, though Goldsboro obtained separate counsel in the litigation, whose appearance was just recently entered.

56.     In light of the e-mails discussed above (which were recently reviewed by counsel upon entering an appearance on behalf of Goldsboro), and the Court's holdings in the Denial Order, the effort to make Goldsboro and the King Family's counsel withdraws comes into sharper relief, as it is apparent the Debtor genuinely regards Serv Trust as his alter ego and this believes that any who once represented his interests did, too, represent this of Serv Trust.

57.     This context also explains why Serv Trust's counsel indicated, in the foregoing letter, that information regarding the Debtor would be relevant to the Debtor's role in the state court litigation, even though the Debtor is not named as a party to those proceedings.

58. Taken together, the demands that money be given to Serv Trust to pay the Debtor's personal legal bills, the Debtor's decision to put his goodwill and efforts in connection with Goldsboro in the name of Serv Trust to avoid paying creditors, the Debtor's refusal to acknowledge his obligations to Goldsboro in this bankruptcy, the creation of a false lien in favor of Serv Trust to try and deprive the Debtor's creditors of money, the Debtor's suggesting that he and Serv Trust are one and the same for legal conflict purposes, the Debtor's not keeping any records of the financial activities of Serv Trust, and the Debtor's expenditure of Serv Trust's money on things that could not possibly be justified from a fiduciary perspective, clearly demonstrate that the Debtor and Serv Trust are one and the same, and that any asset of Serv Trust is, in reality, simply an asset of the Debtor.

## COUNT I – DECLARATORY JUDGMENT

59. Goldsboro repeats and realleges all foregoing paragraphs, as though fully set forth herein.

60. The Debtor repeatedly borrowed money, in the name of Serv Trust, to pay his personal legal fees in connection with legal proceedings to which Serv Trust is not a party.

61. The Debtor repeatedly used funds belonging to Serv Trust to pay his own obligations, and repeatedly sought to have Serv Trust receive such funds – by becoming indebted to third parties – so it would have money to pay the Debtor's personal obligations.

62. The Debtor transferred his own goodwill and the "sweat equity" of his efforts in connection with the Property into the name of Serv Trust to avoid having the proceeds (if any) be susceptible to attack by his personal creditors, at a time when he was insolvent, without receiving any consideration whatsoever.

63. The Debtor created a bogus lien in favor of Serv Trust, on one of his own properties, to frustrate the collection efforts of his own creditors.

10

64. The Debtor changed the size of that bogus lien in accord with is personal financial desires.

65. The Debtor's expenditures of moneys supposedly belonging to Serv Trust is of a form, pattern and habit that would be a gross breach of his fiduciary duties as trustee thereof – not just in the form of self-dealing, but in self-dealing with absolutely no cognizable benefit to the trust's supposed beneficiaries, and in taking Serv Trust further and further into debt so that he may self-deal in its acquired cash – and yet has never scheduled the trust's supposed beneficiaries as creditors in his bankruptcy having claims against him for such openly actionable conduct.

66. The Debtor and Serv Pro dispute the allegations in this Complaint and the parties' positions are antagonistic, and litigation is imminent. A declaration of this court will serve to terminate the controversy.

WHEREFORE, 6789 Goldsboro LLC respectfully prays this Honorable Court (i) enter a judgment declaring (a) Serv Trust is the alter ego of the Debtor, (b) the assets and liabilities of Serv Trust are the assets and liabilities of the Debtor; and (c) the Chapter 7 trustee is to administer the Debtor's estate in the manner inclusive of the assets and liabilities of Serv Trust; (ii) staying all litigation to which Serv Trust is a party (excepting the instant adversary proceedings), pursuant to the mandate of Section 362 of the Bankruptcy Code; and (iii) affording such other and further relief as may be just and proper.

Respectfully submitted,

    /s/ Stephen Metz
Stephen Metz, Fed. Bar No.13720
Offit Kurman, P.A.
4800 Montgomery Lane, #900
Bethesda, Maryland 20814
(240) 507-1723
(240) 507-1735 (fax)
smetz@offitkurman.com

          /s/ Eric Pelletier
Eric Pelletier, Esq. Fed. Bar No. 12716
Offit Kurman, P.A.
4800 Montgomery Lane, #900
Bethesda, Maryland 20814
(240) 507-1739
(240) 507-1735 (fax)
epelletier@offitkurman.com


          /s/ Frances C. Wilburn
Frances C. Wilburn, Esq. Fed. Bar No. 17241
Offit Kurman, P.A.
4800 Montgomery Lane, #900
Bethesda, Maryland 20814
(240) 507-1712
(240) 507-1735 (fax)
fwilburn@offitkurman.com


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 29, 2018, caused a copy of the foregoing to be served via the Court's CM/ECF system or first-class mail, postage prepaid (for those individuals not receiving ECF), to the following:

Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770

Gregory B. Myers (and via email)
700 Gulf Shore Boulevard North
Naples, FL 34102
gregbmyers@verizon.net

Roger Schlossberg
18421 Henson Boulevard
Suite 201
Hagerstown, Maryland 21742
trustee@schlosslaw.com


          /s/ Stephen Metz
Stephen Metz


4848-1309-2985 v.6